Good morning, ladies and gentlemen. The first case this morning is Gossel v. Williams. Mr. Donohue. Good morning, Your Honors. May it please the Court. My name is Peter Donohue, and I'm here on behalf of William Bax & Saltzman. Your Honors, this is a case about attorneys' fees and costs and the facts are straightforward. The Gasels engaged WBS, Williams, Bax & Saltzman, to bring a personal injury case on their behalf and on behalf of their son. They entered into a garden variety contingent fee agreement whereby WBS would receive one-third of the proceeds of the case and the Gasels would be responsible for the costs of litigation. This sort of arrangement is specifically mentioned in the Rules of Professional Conduct in Rule 1.5. With that agreement in place, WBS went to work. They initially filed the case in the Circuit Court of Cook County. It was then removed by the defendants to the United States District Court for the Northern District of Illinois. The case went on for four years. It consumed just under 1,200 hours of attorney's time, time that the District Court found was reasonably incurred. WBS was required to advance in excess of $150,000 of expenses in the case. The lion's share of those expenses were for experts. This was a very technical case. The District Court found, with one exception relating to computerized research, that those expenses were reasonably incurred. The case settled within weeks of the trial date for $687,500, an amount that the District Court found was reasonable and which was to the benefit of Cole, the minor. The case was presented to the District Court for approval under Local Rule 17.1 of the Northern District of Illinois. The District Court praised the settlement, saying that it was impeccably presented, but the court cut WBS's fees from one-third of the gross recovery to one-third of the net, which ended up being a reduction of about $54,000, $55,000. On top of that, the District Court denied expenses for computerized research, Lexis and Westlock, despite the fact that those were expenses that the market would reimburse. Those decisions of the District Court were error. And I'd like to start by talking about the fees. It is undisputed that agreements to represent minors in litigation are enforceable contracts. A lawyer is not required to be paid on a quantum merit basis based on the discretion of the District Court. It's also true that the fees must be reasonable, but that standard is met here. Fees are, this court has said on numerous occasions, that fees are reasonable if they mirror the market rate. And we have many indicia here that the fees, in fact, are consistent or even lower than the market rate. And the first piece of evidence we have is simply the contract between WBS and the Gazels. This was an arm's-length transaction that, in and of itself, is a reflection of how the market would value WBS's services. Right, but we're in a different kind of legal zone here with the minor settlement court approval rule. This is not in the same domain as fee-shifting statutes, for example, where the standard measures of reasonable fee would apply. We're really in a different area of law. We're in the area of law that exists in both state and federal court where minor settlements require court approval. That's correct, Your Honor. The difficulty that I am having with this case is that there's really no standard for the court's exercise of discretion in approving or disapproving the settlement or making adjustments to it in terms of the fee recovery. I don't see a standard in either federal or state law here. Your Honor, if I may address that, I think that there is the standard, which is a reasonable fee. And a reasonable fee has been determined to be the market fee by this court and by the Illinois courts. And I'm not aware of a case where a different standard has been set forth. In the context of minor settlements? In the context of a minor settlement, the market fee? Right.  However, I have also seen there are cases that apply the general reasonableness standards of Rule 1.5 of the Rules of Professional Conduct, which apply across the board to all legal fees. Right. Well, why would that be the right standard in this context? The market rate standard that is applicable in an ordinary fee-shifting statutory context. Why should it apply in this context, Your Honor? Right. I mean, this is a rule that exists both in state law and federal law in a sort of parens patriae function, right? Looking out for the best interests of the minor. And so why shouldn't a different standard apply? Well, because, Your Honor, I think the Illinois Supreme Court put it in the Leonard Arnold case that these agreements that really minors with respect to fee agreements do not stand in a different setting than other litigants because there's a policy judgment that minors should be allowed to engage counsel and that competent counsel should be encouraged to take minors as clients. Do the cases in the State of Illinois talk about market, the terms of market? Your Honor, we cite a case in which the Illinois Supreme Court used a market rate to determine what is the reasonable fee. How would you describe the Illinois standard in this area? Well, I think, Your Honor, if I may, first of all, the Illinois standard, which we say is really we don't haven't seen anything to indicate that that Illinois standard is different than the federal standard, which is that an attorney's fee is reasonable if it is consistent with the market. And again, the Illinois Supreme Court has said that these agreements to represent minors stand on an equal footing with other agreements to represent plaintiffs. And in your view, this is a do we use Illinois law here or federal? In my view, Your Honor, it's federal law. Why would we do that? Well, for several reasons, Your Honor. First, we're applying a federal statute or federal rule, which is local rule 17.1 of the Northern District of Illinois. On top of that, the general eerie principle is that a federal law is a federal rule is applied unless the state rule would lead either to inconsistent enforcement of the law or an invitation to forum shopping. Here, there is no indication that it would be inconsistent enforcement of the law because we have nothing to indicate that the Illinois standard is any different than the federal standard. Federal courts very often borrow the state standards. Of course, Your Honor. Why shouldn't we borrow the state standard here? It's a state court litigation. This is a jurisdiction that's based on diversity. Yes, it was, Your Honor. Your Honor, I think the reason why the federal court should not borrow the state standard is that there is well-developed federal law, and the general rule is that federal courts apply federal law in cases before them. And well-developed federal law, is that simply law under the local rule, or is that nationwide? No, Your Honor. I'm speaking with respect to the issue of the reasonableness of a fee. There is well-developed law in this circuit as to what is a reasonable fee. But there isn't any well-developed law with respect to minor settlements. Your Honor, I will agree that we have not found a case where this has been applied to a minor settlement. Most of these cases come up in the context of a class action, where the district court actually sits in a very similar situation. Why is that similar? Why is it similar? Because in a class action, the district judge is required to review the reasonableness of the settlement and the reasonableness of fees in order to protect the absent class members. The judge in a class action has an obligation independently to review the settlement and the fees to make sure that they are in the ---- But there's no court-as-parents, patriae dimension to what the court does in supervising a class action. Yes, there is, Your Honor. With respect to a settlement, the court has to pass similarly to Rule 17.1. The court has to pass on the reasonableness of the settlement and the reasonableness of the fees in order to protect the class members. Maybe I'm not making myself clear here. Yes. When it comes to minors, the court has a different role, minors in litigation, minors in court in any respect. And that's why I'm finding a disconnect between just importing the reasonable fee standard from either the class action context or a fee-shifting context to the domain that we're in here, which is the court's obligation is to protect the interests of the minor. And that suggests a different sort of an approach to approving minor settlements, rather than just importing the market rate, arm's length, contract negotiation kind of standard here. Well, Your Honor, I think it ---- Your Honor, I understand your point. And I'm not saying that they are identically the same, the standards that the district court has in a class action and in this case. I will say, however, we believe they're analogous. But we do think in any context, Your Honor, a lawyer has a right to a reasonable fee. And that's laid out throughout. It's laid out in the Rules of Professional Conduct. It's laid out in Rule 17.1 of the Northern District. The lawyers have the right to a reasonable fee. The standard for a reasonable fee that we have seen is a fee that mirrors the market rate. And that's consistent with what the Illinois Supreme Court held in the Arnold case, which is that it is the goal is to incentivize lawyers to take cases of minors. What was the context of that case? Was that an approval of a minor settlement? Yes, it was, Your Honor. Okay. And that's the closest case we can get from the Illinois Supreme Court? That is, Your Honor, the closest case from the Illinois Supreme Court. There the court said that minor settlements, minor agreements to represent minors are enforceable contracts. And based on this policy judgment, the lawyer should be incentivized to represent minors. Mr. Donahue, your time is up, and I'll give you two minutes, however, afterwards. Thank you, Your Honor. Mr. Schreiner. Good morning, Your Honors. May it please the Court, maybe just briefly on whether this is a matter of state law or federal law. I don't know where we'd find the federal law. And I refer the Court to the Eleventh Circuit's decision in Burke v. Smith, which we cite in our briefs, which I think does a careful analysis and explains why, in a diversity case, the approval of a minor settlement is a matter of substantive law in which one should follow the law of the state. Now, to Judge Sykes' question about what the standard is, I think the standard of review is the standard of this Court is to review Judge Schader's decision to determine whether he acted within the realm of his discretion. As the Court has said frequently, the question isn't whether he was right but whether he was reasonable. Judge Schader, fully aware of his duty under Illinois law, and again, I don't think the local rule adds anything. It's just a mechanical rule that says the judge doesn't purport to apply any standards. He said there were some things that bothered him about having 60 percent of the recovery go to the combination of attorney's fees and costs incurred in this case, only 40 percent go to the minor. He thought that it did not sufficiently value the value in this case of the pain and suffering that the child had suffered had sustained and of his potential need for future medical treatment to allow 60 percent to come off the top. He talked about that. He talked about a lot of things, as I think Judge Schader sometimes does, but he thought about this case carefully. After his adjustment, was it about 50 percent? About 50 percent instead of 60 percent going to the lawyer, so the child got an extra $55,000 under his decision. He did not denigrate the notion of a contingent fee contract, and by the way, the Illinois Supreme Court, in its only recent essay into this area in the Arnold case, says there's nothing wrong with contingent fee contracts for minors. Interestingly, though, there, a local rule adjusted down the contingent fee from 33 percent to 25 percent in that case, and the Supreme Court said that's fine. So there isn't anything magic to the fact that the parents of the child have entered into a contingent fee contract with the lawyers. It isn't sacred. It is subject to review. That's just one of the rules of the game when you're pursuing a personal injury case on behalf of a minor, is that you have to satisfy the judge at the end of the case that the fee you're asking for is reasonable. And in this particular case, Judge Schader said, I mean, the appellant makes the point that, you know, this is all done ex post as opposed to ex ante. Yes, of course it is. You're approving a minor settlement. That's by definition ex post. You know what the facts are. You know what the circumstances are. And I think the standard has got to be that the trial judge exercises an informed discretion, explains the reason why the judge has made the decision that the judge has made in terms of the particular case, and then, unless the trial judge is way off base, has said, you know, it's because I woke up this morning and I realized that the stars were aligned in a certain way and I should do this, the Court of Appeals ought to defer to the judgment of the trial court. That's the sense I take out of the case. But what is the substantive legal standard? I get what our standard is. Reasonableness. It's reasonableness, but it's reasonableness as determined by the district judge in light of a full knowledge of the case and of the circumstances and of the needs of the minor. The Arnold case cites, you know, ancient Illinois authority to the effect that it's the best interest of the child that really drives this. That's not a standard we're used to in class action lawsuits and other areas in which judges have to approve legal fees. The court has a broad discretion and a duty to look at it from the interest of the child. That's what the district judge does. That's what the trial judge does in the state court in deciding whether or not to approve an attorney fee. I mean the power in Illinois of the trial judge in looking at a minor settlement is perhaps best shown in the Will v. Northwestern University case, which we cite from about seven years ago, where the trial judge compelled the administrators of the estate to accept a settlement that the administrators didn't want to accept. And essentially what the appellate court said in that case was that the trial judge was right to do that because it's the trial judge's responsibility to act in the interest of the child, even to the extent of displacing the judgment of the guardians and ex-friends, whoever it might be, in the circumstances. And that's what happens here. Judge Shader, as he sometimes does, also talked about the fact that he thought that this was essentially a, after the fact at least, he had expressed some doubt about why the lawyers were distinguishing between the money that they had out in expenses as opposed to the opportunity costs that they had paid in terms of their time. Essentially I think what he said was he thought that under the circumstances of this case, a 33% recovery of everything that the law firm had invested in it was fair and in the best interest of the child. Lawyers, I think, do know and have to know that when they take on personal injury cases for plaintiffs, the deal they cut with the guardians or the plaintiffs is not the final word if the trial judge ultimately decides that that's not appropriate under the circumstances and articulates the reasons why the judge comes to that decision in a way that is reasonable. Well, these contingency fees, this contingency fee arrangement where the attorney's fees are a percentage of gross rather than the net recovery, that's been blessed by the Illinois Supreme Court as an ethical matter. The only requirement, Your Honor, is that that be disclosed in the contract as it was here, we're told. So the only ethical requirement is that it be put out there. There's nothing wrong with it. There's nothing wrong with it as a concept. But it can't be applied in this case if the trial judge decides in the end that that's too rich, that that's too much to pay for this recovery. Well, shouldn't we be concerned, though, that this makes the representation of competent counsel less available to minors? That's the point that the law firm is making here. If this decision is upheld on appeal, we've got a rule that disincentivizes counsel from taking these cases on standard terms that have been approved by the state Supreme Court as an ethical matter. No, Your Honor, I don't think so. First of all, what Judge Shader decides doesn't establish a rule. It's in the nature of a discretion that's afforded in an individual case based on individual circumstances, which an appellate court reviews because it's a fair exercise of discretion, that it doesn't establish a rule. I don't think this court should say that it can never be more than 30 percent of the total. That is not what's called on here, and it's not necessarily what Judge Shader would say in the next case, even if it comes before him, if the recovery is sufficient and the child's personal situation is adequately protected by the settlement. So, you know, I think lawyers are pretty smart. I think lawyers figure things out. I think lawyers, in deciding whether to take a contingent fee case, Judge Shader said there would have been a lot of law firms that would have taken this case. But lawyers make those assessments. And certainly one of the assessments that good lawyers like this firm should be making is that at the back end, some trial judge is going to look at this case and decide whether or not this fee is more than that judge will approve. And that's, you know, based on whatever comes before it. The fact that a lot more has been spent on expert fees, for example, as was the case here, than maybe were anticipated is one of those things that didn't go as the law firm hoped it would and maybe it ended up making a bad bargain. I don't think that's going to chase plaintiff's personal injury lawyers away from a case like this. If we could move to how to classify computerized legal research, that's sort of a... Well, I think, yeah, that's the $10,000 item in this case. I think that we've harmonized the cases from this court. And I think that the basic rule is that computerized fees are recoverable. Of course, those are all different kinds of cases. But they're recoverable separately when basically it's either an hourly rate or a lodestar, which mimics hourly rate. They're not recoverable separately because they are, in fact, attorney's fees. They replace attorney's times. They're not recoverable separately in a contingent situation because I think that's what this court's cases say. Right, and that's a reasonable way to harmonize the cases that seem to point in different directions, and it looks like the Illinois courts are following that sort of dichotomy. I question whether it makes any sense in the modern era. It's kind of antiquated. Everybody does research by computer now, and to suggest that there's a time savings if you use the computer instead of the books and so we're not going to compensate for it doesn't seem to make a whole lot of sense. Maybe we need to chuck that. It seems to me that we've looked at your cases, and sometimes they're allowed as a separate item and sometimes they're not. That's the best way we can harmonize what they are, and it seems to make sense to me. Thank you, Your Honor. Thank you, Mr. Schreiner. Mr. Donahue, you have two minutes. Thank you, Your Honor. Your Honor, with respect to the standard that applies here, what I'm hearing from the amicus is essentially that this is a decision on the fee issue which is standardless, that it's left to the judge's discretion, but there appears to be no rule, according to the amicus, as to how that discretion should be applied. And we don't think that's correct. We think the standard is well established, that discretion is tempered and guided by legal rules, and we think that there actually are legal rules that have been established in this circuit, which is the market-based standard of which I spoke earlier. With respect to the computerized research, Your Honor, Judge Sykes, we agree that it is antiquated. It should be chucked. There are numerous expenses of litigation that help a lawyer do the job more efficiently. For example, a retained expert who helps a lawyer sift and understand complex information, that would be recoverable as an expense of litigation. Really, computerized research, which helps a lawyer get to the bottom of the legal issues quicker, stands practically on no different footing, and it should be recoverable, if it is recoverable by the market. And on that, I thank you, Your Honors. Thank you, Mr. Donohue. Thanks to both counsels. Thanks to Mr. Schreiner for taking this case as well. My pleasure. The case will be taken under advisement.